STATE OF VERMONT
ENVIRONMENTAL COURT

|  | } |  |
|---|---|---|
| In re: Appeal of Beebe | } | Docket Nos. 40-2-06Vtec |
| (9-lot subdivision) | } |  |
|  | } |  |

## Decision on the Merits

Ted Beebe has sought to subdivide his property along Spooner and Jones Roads in Highgate for several years. This appeal represents his fourth attempt to gain subdivision approval from either the Town of Highgate Planning Commission (Planning Commission) or this Court. The Planning Commission denied preliminary plat and site plan approval to Mr. Beebe's current plan for a nine-lot subdivision, which was followed by his timely appeal to this Court.

At the time that Mr. Beebe filed this appeal with the Court, he had two other appeals pending: Docket No. 204-11-04 Vtec concerned Mr. Beebe's appeal of a denial of his planned five-lot subdivision for the same property and Docket No. 218-11-04 Vtec concerned Mr. Beebe's appeal of a denial of his planned four-lot subdivision for the same property. Mr. Beebe also had appealed the Planning Commission's refusal to hear his application for a nine-lot subdivision, in Docket No. 237-12-04 Vtec, which was remanded by this Court back to the Planning Commission for further consideration.[1] See In re: Appeal of Beebe, Docket No 237-12-04 Vtec, et. al., Decision and Order on Mot. for Summary Judgment (Nov. 18, 2005). Upon remand, the Planning Commission denied Mr. Beebe's revised nine-lot subdivision application, based upon its Findings of Fact dated February 6, 2006. Mr. Beebe's subsequent appeal is the subject of the sole docket that remains pending before this Court.[2]

The remaining appeal came to trial on June 6, 2006, during which Mr. Beebe (hereinafter referred to alternatively as "Applicant" or "Mr. Beebe") was represented by Daniel O'Rourke, Esq.; the Town of Highgate ("Town") was represented by David A. Barra, Esq.; and the following ten Interested Persons appeared and represented themselves: John F. Perrotte, Pennie

---

[1] The Planning Commission previously denied a nine-lot subdivision application in April of 2004 which Mr. Beebe chose not to appeal to this Court.

[2] Docket Nos. 204-11-04 Vtec, 218-11-04 Vtec, and 40-2-06 Vtec were all originally scheduled for a merits hearing. Prior to trial, Mr. Beebe announced his intention only to go forward with his proposed nine-lot subdivision, Docket No. 40-2-06 Vtec, and voluntarily dismissed the appeals relating to his proposed five-lot and four-lot subdivisions.

LaFlame, Sandra A. Jones, Pauline Decarreau, Nancy Ward, Carol Hager, Myron B. Messeck, William Ashton, Joyce Ashton and Patricia Rainville.

Based upon the evidence admitted at trial, including evidence put into context by the site visit that preceded the trial, the Court makes the following Findings of Fact:

## Factual Findings

1.      Applicant owns a tract of land of about 32.8 acres that lies in between Spooner and Jones Roads.  This parcel is the site of Applicant's pre-existing single family house and accessory buildings, which are accessed from Spooner Road.

2.      Applicant also owns another tract of land, undeveloped, that lies across Spooner Road from the subject property.  This parcel contains about 15.6 acres and is not proposed for development or subdivision by the pending application.

3.      This section of Town is located in the horizontal triangle that forms the southeast corner of Highgate, with the Town of Franklin to the north and the Town of Sheldon to the south.

4.      The proposed subdivision would consist of a total of nine lots.  The exiting Beebe residence would be located on Lot #4, which would contain 6.44± acres.  The eight other proposed lots would be of various sizes, from 1.82± acres to 9.66± acres.  The preliminary subdivision plat (labeled "Preliminary Plat  S-1") was admitted at trial as Exhibit 4; a copy of this Exhibit is attached to this Decision for reference purposes.

5.      The immediate neighborhood is rural in character, consisting of several parcels of undeveloped land, all much larger in size than the minimum lot size allowed by the current zoning regulations.  Any nearby development consists of single family residences.  With the exception of the 9.66± acre lot (Lot #5), all the proposed lots are smaller than the adjoining or nearby parcels.  Less than a mile southeast of the proposed subdivision, adjacent to the school bus stop mentioned below in paragraph 25, are several single family residences on lots much smaller in size than the proposed lots.  These lots were created prior to the enactment of the current Highgate Zoning Bylaws.

6.      The current subdivision plat incorporates changes from Applicant's previous four, five and nine-lot subdivisions.  The current plat includes references to on-site water supply and

2

wastewater disposal[3] systems. Seven of the proposed lots would be accessed from Spooner Road and two would be accessed from Jones Road.

7. Spooner and Jones Roads are designated as Class III town roads and are maintained by the Town Highway Department. Both roads are of dirt and gravel construction. Each road varies in the width of its traveled lane, from 15 feet to 20 feet. They are in a rural area of this rural northern Vermont town; neither road experiences much traffic and both are also often used by pedestrians and drivers of four-wheelers.

8. Spooner Road comes to a dead end shortly after the proposed development. Jones Road reverts to a Class IV town highway as it travels north into the adjoining Town of Franklin, no more than a mile above the proposed subdivision.

9. Spooner and Jones Roads appear as adjoining fork prongs at the northerly tip of Dutton Road. When traveling from the northern end of Jones Road to Spooner Road, one must turn nearly 330 degrees. A driver traveling down Spooner Road and onto Dutton Road must "peek out" of the intersection to safely observe whether on-coming traffic is traveling down Jones Road. Due to its steepness, the presence of ledge and natural growth, the sight distance from Spooner Road up Jones Road, and visa versa, is very limited.

10. While Jones Road is relatively flat in the vicinity of the proposed subdivision, the land rises sharply on the northerly side of the Road and onto proposed Lots 6, 7, 8 and 9.

11. Jones Road has roadside ditches in the vicinity of the Beebe parcel. There is a beaver pond on Jones Road, about a quarter to a half mile northeast from the proposed development. This water source was referenced during trial as a possible site for the Highgate Fire Department (Fire Dept.) to refill its water tankers. However, the acting Fire Dept. Chief testified, and the Court so finds, that the Beaver Pond would not be suitable because it does not yet have a dry hydrant from which the Fire Dept. tankers could safely draw water.

12. The nearest dry hydrant or other water source available to the Fire Dept. is located in East Highgate. Depending on the road and weather conditions, Fire Dept. equipment could make the journey from these water sources in anywhere from fifteen minutes, under ideal circumstances, to sixty minutes, or more, under dangerous weather conditions.

---

[3] Applicant's engineer testified that "most" of the on-site wastewater disposal systems would be "mound" systems, necessitated by the type of soils and ledge on site. Mound systems get their name from the mound of sand or other soils that are brought on site, usually because the existing soils are not deemed suitable to support an in-ground waste disposal system. The wastewater disposal systems proposed for Lots 6 and 7 are proposed to be located on Lot 5, presumably because suitable sites for wastewater disposal systems could not be located on Lots 6 and 7.

13. From East Highgate or Highgate Center, one who wishes to travel to the project site must take Rice Hill Road and Dutton Road, to the fork formed by Spooner and Jones Roads. Portions of Rice Hill and Dutton Roads pass through the adjoining Town of Sheldon. Winter and spring weather conditions sometimes make these roads impassible, thus making it difficult for emergency responders from Highgate to reach the proposed site.

14. While Spooner Road has a traveled width similar to Jones Road, it appears narrower, due to nearby tree cover and the lack of roadside ditches. Spooner Road is steep in places, particularly where the driveways would enter Spooner Road from Lots 2, 3, 5, 6, and 7. Lot 5 only has road frontage of about fifty feet; it is located mostly behind Lots 1, 2, and 3. Its proposed access will be a driveway of about 500 feet, the front portion of which is shared with Lot 3.

15. There are ledge outcroppings throughout the Beebe parcels, particularly near Spooner Road. This ledge is the primary reason that there is not much in the way of ditches along Spooner Road. Nearby wetlands are often the source of water that sometimes runs along and over Spooner Road. This road experiences washouts and washboard conditions several times each year, making the road either difficult or impossible for two-wheel drive vehicles to travel.

16. Spooner Road currently serves two residences: the Beebe residence and the former Spooner farm homestead. Interested Person Patricia Rainville, who used to live at the former Spooner homestead, was a credible witness, particularly on the relative dangerousness of two-way travel on Spooner Road, due to steepness, curves in the Road that make for short sight distances, and water and ice conditions. The steepness of Spooner Road, particularly near the bottom where it intersects with Jones and Dutton Roads, and in the area of proposed Lots 2, 3 and 5, sometimes requires drivers to accelerate so that they have enough speed to ascend the steepness. In doing so, drivers would sometimes also honk their horns, so as to announce their arrival to cars or pedestrians above them that they could not see, due to the curves and steepness of Spooner Road.

17. The Highgate Town Administrator also provided credible testimony concerning the difficulties faced by the Town in its dealings with Spooner Road. He noted that most of Spooner Road and much of Jones Road have no safe shoulder areas; in many spots there is either no shoulder or a "soft" shoulder which could cause difficulties for vehicles venturing on to it.

4

18. The Town Administrator also testified, and the Court so finds, that Spooner Road is a unique road in Highgate, due to its steepness and narrowness. Spooner and Jones Roads have had recurring problems with washouts; road maintenance in this area "is a real challenge", as the Town Administrator and others testified. Town highway trucks going off of Spooner Road and needing assistance "are an annual event." When weather conditions prompt road repair needs in Town, roads of more importance (i.e.: "connector" roads) than Spooner and Jones Roads are repaired first.

19. Mr. Beebe offered a written statement from the former Fire Dept. Chief (Appellant's Exhibit 14) that, based upon his review of one of Mr. Beebe's previous site plans, "the road as indicated on this plan is wide enough to allow for the ingress and egress of fire apparatus . . . [and] for them to move around." This affiant did not testify at trial and was no longer the current Fire Dept. Chief at the time of trial. We find these representations of little persuasion in making factual determinations relevant to Mr. Beebe's revised subdivision plan.

20. We found persuasive the testimony of the current acting Fire Dept. Chief and written statement of his assistants (Town Exhibit B). The Chief testified based upon his recent observations of the site, as well as his general familiarity with the area, having been an area fireman for twenty-three years. The Chief testified, and the Court so finds, that the Fire Dept. "cannot provide adequate protection, the way the roads are." The Assistant Chiefs noted the following deficiencies and needs in the area of Spooner and Jones Roads, which the Court incorporates into its Findings:

   a. Intersection of Spooner and Jones Roads needs to be widened and negotiable from all directions;

   b. Year-round water supply for fire protection of new homes, with a minimum flow of 250 gallons/min. for a minimum of 2 hours;

   c. New roads/driveways built to meet State weight specifications, to have a traveled portion of no less than 21 feet, and with a cul-de-sec at the end of roads or driveways with a minimum radius of 100 feet, so Fire Dept. equipment can turn around;[4]

   d. These same concerns exist, given the existing condition of Spooner and Jones Road, regarding the potential of the Fire Dept. to be able to reliably access the area and supply sufficient water, should the existing homes suffer a fire.

21. The ledge and natural vegetation adjacent to Spooner Road would make it very difficult and expensive for the Town to either widen the Road to accept additional traffic or install ditches

---

[4] The existing roads fall below these minimums.

and culverts to lessen the frequency of washouts or washboards on the Road. During cross-examination, the Town Manager testified regarding the Town's investigation into the amount of work, including blasting, and cost of making the needed improvements to Spooner Road. The Town received estimates that the required work could cost the Town up to $100,000.00.

22. Milk trucks used to deliver or pick up from the former Spooner homestead, but then refused to continue to do so, due to the condition of Spooner Road. Loggers have established a staging area on the road, just below the former Spooner homestead. There was no testimony offered that the logging trucks had difficulty negotiating Spooner Road.

23. School buses go no further than Dutton Road; they do not travel up Spooner or Jones Roads. The school bus contractor testified, and the Court so finds, that this was because of the past difficulty traveling on Spooner and Jones Roads. Several witnesses testified, and the Court so finds, that it was difficult for another vehicle to travel on Spooner Road when a school bus, Town truck or Fire Dept. vehicle was attempting to negotiate the road in the opposite direction.

24. There are currently six school-aged children in the vicinity of the proposed subdivision. The eight additional homes in the proposed subdivision could add five more school-aged children, thereby doubling the number of children who require school bus services.

25. Once the school buses stopped traveling to Spooner and Jones Roads, a school bus stop was established on Dutton Road, just above the Highgate/Sheldon town line. It was unclear from the testimony presented whether this school bus stop is on private or public land. The bus stop is large enough for the school bus to turn around, head back through Sheldon and on to the Highgate schools,[5] but the bus stop area is not large enough for parents to park their cars. Parents often park or idle along the edge of Dutton Road while they wait for the school bus. These cars are parked partially on the traveled lane of Dutton Road, making two-way traffic difficult.

26. Town trucks from Sheldon, Highgate and Franklin use the school bus stop on Dutton Road to turn around when they are grading or plowing their respective portions of these roads.

27. The parcel that Mr. Beebe proposes to subdivide straddles two zoning districts. Lots 1, 2, 3, 5, and a portion of Lot 4 are in the Protected Area District. Lots 6, 7, 8, 9, and most of Lot 4 are in the Forest Reserve District.

---

[5] One bus serves the Highgate elementary school, middle school and high school-aged children. The Dutton Road bus stop is also used by buses serving the Sheldon school-aged children.

6

28. Several witnesses testified to the presence of wildlife in the vicinity of the proposed subdivision, including moose, bear, deer, mink, rabbit, and turkey. An established deer yard is located on Mr. Beebe's adjacent 15.6± acre parcel. No evidence was offered at trial of a deer yard or other established wildlife area located on the subject parcel.

29. In response to one or more concerns expressed about his previous subdivision proposals, Mr. Beebe included revisions in his current proposal. One such revision was to restrict the cutting of trees to building envelopes and the areas where water supply and wastewater disposal systems would be located. Mr. Beebe's expert testified that these cutting restrictions were offered to address undue adverse impacts on aesthetics, wildlife, area ledge outcroppings and nearby wetlands. Mr. Beebe suggested that these cutting restrictions could be incorporated as a condition into any subdivision approval and would be included in any deed used to transfer title to the subdivided lots. There was no suggestion offered, however, as to how these cutting restrictions would be policed or enforced; there is no homeowners' association suggested for this subdivision. The enforcement responsibilities for these cutting restrictions would therefore fall upon the Town Zoning Administrator.

30. Another revision to Mr. Beebe's subdivision proposal involves the addition of stormwater collection systems for each lot and dwelling. The prior concern had been that, with the addition of impervious surfaces (i.e.: roof tops and driveways), stormwater would flow more rapidly over and off of the property and could increase erosion and other damage to the land and the adjoining roads. Mr. Beebe proposes to install roof drains leading to six underground stormwater chambers that would overflow into swales located along the proposed driveways. Some of the swales would lead onto Spooner Road. Mr. Beebe's expert opined, and the Court finds, that the proposed stormwater collection would reasonably assure that the proposed development would not cause a significant increase in the stormwater that runs off the Beebe property. However, Mr. Beebe's expert did not address the pre-existing conditions that have led to prior washouts and washboard conditions on Spooner Road.

31. The Town conducted an extensive survey of the natural, environmental, geographical and man-made constraints on development of Town lands. The Town then classified all Highgate lands into six categories: those where the development constraints were (1) None/Slight; (2) Slight/Moderate; (3) Moderate; (4) Moderate/Severe; (5) Severe; and (6) Absolute. The Town's analysis classified the constraints on development of the Beebe subject parcel as

"Moderate/Severe", with the exception of the area around the existing Beebe and former Spooner homestead residences, which areas were classified as only "Moderate". These classifications of the Beebe parcel were based upon the steepness and other limitations of the roads, the natural beauty of the area, distance from highways or municipal services, and the ability of the soils to support development within the limits allowed by the applicable zoning regulations.

32.     There was much debate between the parties as to whether a similar development or developments had been permitted by the Town along another Class III road of similar condition to Spooner Road. No such development appears to have been permitted in Highgate. This fact (or lack of fact) was of limited influence upon the determinations made here. The Court reached the legal conclusions which follow, based upon the specific factual representations made concerning Mr. Beebe's revised proposed subdivision.

### Discussion

This Court is charged with rendering a decision upon all issues preserved for its review in the pending appeal. Appellant listed twelve legal issues in his initial Statement of Questions, which were then reduced to eleven issues in an Amended Statement of Questions agreed upon by the parties just prior to trial. The eleven remaining issues fall into three broad categories, pursuant to their basis is three separate Articles from the Highgate Subdivision Regulations ("Regulations"): the "Purpose" provisions of Article I, Section 120; the subdivision application requirements and "Standards for Evaluation" of Article VII, Section 700; and the "Lot Layout" standards of Article VIII, Section 880.

With his post-trial filing of proposed Findings and Conclusions, Mr. Beebe filed a memorandum challenging the enforceability of the Regulation provisions referenced in his first, second, third, and sixth Questions from the agreed-upon Statement of Questions. In essence, Mr. Beebe bases his challenge upon an assertion that these provisions are not regulatory in nature, but rather only serve the function of stating the purposes for which the Regulations were enacted. The Town responded to Mr. Beebe's post-trial memorandum, although it did not challenge his characterization of Regulations §§ 120.3, 120.6, 120.7, 120.8, and 700.5 as purpose and not regulatory provisions.

It is well established that a "purpose statement . . . has no direct regulatory effect." In re Meaker, 156 Vt. 182, 185 (1991) (citing Kalakowski v. John A. Russell Corp., 137 Vt. 219, 225 (1979)). Thus, even though it was Mr. Beebe who preserved these very issues for review in this

8

appeal, it appears improper for us to consider the enforceability of the Regulations sections referenced in his Questions 1, 2, 3, and 6. We note that the Planning Commission below based its denial of Mr. Beebe's subdivision application, in part, on its legal conclusion that his proposed project was not in compliance with Regulations §§ 120.3, 120.6, 120.7, 120.8, and 700.5.[6] We presume that Mr. Beebe made reference to these sections in his Statement of Questions because of the Planning Commission's reliance upon those sections in its denial of his application. However, since those provisions clearly set out the purpose of the Highgate Regulations and are not regulatory in nature, they are not specifically enforceable. Meaker, 156 Vt. at 185.

We do not interpret the precedent of Meaker to be that purpose provisions serve no function in this Court's review and must be disregarded. As the Town suggests in its reply memorandum, purpose provisions provide insight into the intent of municipal regulations, aid in construing their meaning, and help provide context to the regulatory provisions. This Court has previously so stated, see Appeals of Perrine, et al., Docket No. 221-12-03 Vtec, slip. op. at 6 (Nov. 30, 2004) (quoting In re: Appeal of Baribault, Docket No. 165-9-98 Vtec, slip op. at 8 (May 29, 2000)), and we know of no prohibition against relying on these purpose provisions, where appropriate, when interpreting regulatory provisions. Therefore, we do so here where appropriate. We next move to our review of the applicable regulatory provisions.

## I. Is the proposed subdivision "suitable" and "compatible"?

Questions 4, 7, 8 and 11 raise the overlapping issue of whether the proposed subdivision is suitable and compatible with its neighborhood and surroundings under the applicable provisions of Regulations §§ 700.1, 700.7, 700.8, and 880.6. We conclude that the proposed subdivision is not suitable or compatible, because of the number of lots proposed, the limitations of the roads which will be used to access the lots and the natural beauty and character of the neighborhood.

There are currently two residences along Spooner Road. The proposed development would raise the number of residences accessed by Spooner Road to eight. This fact alone would

---

[6] Section 700.5 appears more regulatory and less of a purpose statement than the other provisions. However, as referenced in Applicant's Amended Question 6, it requires a determination that the proposed subdivision is in conformance with the purpose provisions stated in the Zoning Bylaws for each of the two applicable zoning districts. We therefore conclude that, in the context of Applicant's Amended Question 6, § 700.5 is a purpose statement and therefore need not be the subject of further analysis in this Decision.

not be a sufficient basis to deny this application. However, we note that Spooner Road is unique in that it is remote, steep, narrow, and sometimes inaccessible. These road conditions contribute to our conclusion that a subdivision of this magnitude is not suitable or compatible for this area.

The Town has attempted to preserve the natural beauty of this area by designating it within the Protected Area and Forest Reserve zoning districts. In conformance with Regulations § 700.1, we arrive at the conclusions of unsuitability and incompatibility by taking into consideration the characteristics of this neighborhood, including its steep slopes, topography, rock and adverse earth formations. The areas where the driveways will be located for Lots 2, 3, 5, 6, and 7 are along a steep road, as it curves. These characteristics have led some past users to honk their horns as they drive in these sections, to prevent a car coming in the other direction (or a pedestrian) from crashing into them. The road is subject to washouts and washboard conditions. The number of homes served by this road, if this subdivision were approved, would go up by a factor of four, thus increasing the amount of traffic on the road by that margin. Appellant makes the point that the vehicles traveling this road don't cause these conditions, they are instead caused by a lack of ditches and water flow. While that may be true, such a significant increase in traffic on this very rural road will only lead to conflicts, not compatibility.

## II. Aesthetics.

Applicant revised his pending subdivision proposal from a previous proposal by reconfiguring the lots to take into account the wetlands, streams and rock outcroppings on his property. He also proposed to restrict the cutting of trees on the proposed lots to designated building envelopes and areas for the water supply and wastewater disposal systems. These cutting restrictions will minimize the aesthetic impact of the proposed development. Although there was no representation that the area will appear exactly as it now appears, the cutting restrictions will help minimize the aesthetic impact.

Whether future owners will hold true to these cutting restrictions is somewhat uncertain, since Applicant suggests that enforcement will be accomplished only through deed restrictions and future zoning enforcement actions. However, based upon the admitted evidence, we conclude that Applicant's proposed subdivision "includes due regard for the preservation and protection of existing aesthetic features" in the area and is therefore in compliance with Regulations § 700.2.

### III. Municipal services and highways.

We are asked by Questions 9 and 10, which reference Regulations §§ 700.10 and 700.12, respectively, whether the proposed subdivision will "place an unreasonable burden on the ability of the local government to provide municipal, educational or other governmental services and facilities" or "cause unreasonable highway congestion or unsafe conditions . . . ." In considering these regulatory requirements, we note that a mere burden created by a proposed subdivision cannot doom it to failure; the burden must be "unreasonable." Regulations §§ 700.10, 700.12. Within the context of the rural character of this area and the limitations of the roads serving it, we conclude that Applicant's proposed nine-lot subdivision will place a burden upon the Town and its highways, and that burden will be unreasonable.

The proposed subdivision is expected to nearly double the number of schoolchildren the Town must serve from this area. While the number is small, five children, the facilities for serving schoolchildren from this rural area of Town are meager, at best. The school bus stop appears to operate on the good graces of adjoining land owners and those that travel these roadways. A doubling of the number of cars idling along the edge of Dutton Road will only create a greater increase in the potential for danger to schoolchildren that the Town will be obligated to address. While the proposed development will nearly double the number of schoolchildren, there is no proposal of how the Town could respond to this increased need, other than to simply allow even more idling cars to queue up along the narrow edge of Dutton Road.

The proposed subdivision's impact is cumulative; if the only burden expected by it was to the school bus stop and the families who use it, we would not conclude that it would be unreasonable. But the significant increase in the number of residences to be served by Jones Road, and particularly Spooner Road, will cause an unreasonable burden upon the Town to provide highway and fire protection services to the area, including to the proposed new homes, and place an unreasonable additional burden upon a road, Spooner Road, which already barely meets the needs of the families now served by it.

Members of the Town Fire Dept. had already expressed their concern about their ability to respond to emergencies on Spooner Road. The proposed subdivision will only add to the potential that the Fire Dept. will be called upon to respond to some emergency that cannot be accessed. If the Town were to choose to improve Spooner Road to the minimum standards required by the Fire Dept.'s recommendations, the Town could incur an expense equal to one

11

quarter of its total annual highway budget. These facts lead us to conclude that the burden placed upon the Town and its highways by this subdivision will be unreasonable.

For all these reasons, we conclude that the Beebe nine-lot subdivision, as presented at trial, does not conform to Regulations §§ 700.10 and 700.12.

In light of the conclusions reached here, Mr. Beebe's subdivision application is **DENIED**, as it is not in compliance with the applicable provisions of the Highgate Subdivision Regulations.

This Decision addresses all issues currently pending before this Court. A Judgment Order accompanies this Decision.

Done at Berlin, Vermont, this 30th day of January, 2007.

_____

Thomas S. Durkin, Environmental Judge



beebemap.pdf